## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**TSVA HOLDINGS, INC.**

      **Plaintiff,**

**v.**                                  **No. 1:23-cv-00967 MLG/DLM**

**DORNIER LEASING COMPANY LTD.;**
**DORNIER LEASING COMPANY**
**HANGAR FLYMEX; HANGAR FLYMEX; and**
**ENGINE MANAGEMENT SPECIALIST, LLC,**
**a West Virginia company,**

      **Defendants.**

### FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, FRAUD, CONSPIRACY TO COMMIT FRAUD, FRAUDULENT INDUCEMENT, CONSPIRACY TO COMMIT FRAUDULENT INDUCEMENT, NEGLIGENT MISREPRESENTATION, JOINT VENTURE, VIOLATION OF THE UNFAIR PRACTICES ACT, AND PUNITIVE DAMAGES

COMES NOW Plaintiff TSVA Holdings, Inc., (hereinafter "TSVA" or "Plaintiff"), by and through their counsel of record, Hinkle Shanor LLP (Thomas Hnasko, Kurt B. Gilbert, and David Lynn), for its First Amended Complaint for Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, Fraud, Conspiracy to Commit Fraud, Fraudulent Inducement, Conspiracy to Commit Fraudulent Inducement, Negligent Misrepresentation, Joint Venture, Violation of the Unfair Practices Act, and Punitive Damages ("Complaint"),[1] states as follows:

### PARTIES

1.    Plaintiff, TSVA Holdings, Inc., is a foreign profit corporation organized and existing under the laws of the State of Delaware with its principal place of business in New Mexico at 116 Sutton Place Taos Ski Valley, New Mexico, 87525.

---

[1] This amended Complaint is filed as a matter of right pursuant to Federal Rules of Civil Procedure Rule 15(a)(1)(B).

2.      Dornier Leasing Company Ltd. (hereinafter "Defendant Dornier") is, upon information and belief, a foreign corporation registered at 5th Floor Nova Atria, North Backthorn Road, Sandyford Business Park Sandyford Dublin, Sandyford, Dublin, D18F5X2, Ireland.

3.      Dornier Leasing Company Hangar FlyMex (hereinafter "Defendant FlyMex") is, upon information and belief, a foreign corporation located at Calle 3 Lote 22, Col. San Pedro Totoltepec, Toluca, Estado de Mexico, 50226 Mexico.

4.      Hangar FlyMex is, upon information and belief, a foreign corporation located at Calle 3 Lote 22, Col San Pedro Totoltepec, Toluca, Estado de Mexico, 50226 Mexico.

5.      Defendant Dornier Leasing Company Ltd. and Defendant Dornier Leasing Company Hangar FlyMex are, upon information and belief, engaged in a joint venture under New Mexico law.

6.      All defendants are collectively referred to in this Complaint as "Defendants."

## PERSONAL JURISDICTION EXISTS OVER DORNIER AND FLYMEX

7.      This Court has personal jurisdiction over the parties and the subject matter of this action.

8.      Defendant Dornier Leasing Company Ltd. and Defendant Dornier Leasing Company Hangar FlyMex consented to submit to the jurisdiction of the courts of New Mexico.

9.      Dornier contractually agreed to the Purchase Agreement's forum-selection clause explicitly stating that the parties are subject to the jurisdiction of courts in New Mexico.

10.     Jurisdiction over FlyMex exists because the forum-selection clause can be enforced against it as closely related party to the dispute, as more fully described herein.

11.     Although FlyMex did not actually sign the Purchase Agreement, FlyMex was inextricably involved in the transaction because FlyMex communicated with TSVA and Former

Defendant Engine Management Specialist, LLC ("EMS"), arranged and carried out the pre-purchase inspection, negotiated the contract, and fulfilled the seller's duties with respect to the contract. Therefore, despite not signing the agreement, FlyMex was closely related to this Purchase Agreement and the subject transaction and, hence, subject to personal jurisdiction.

12.     FlyMex is specifically referenced in the Purchase Agreement. The Purchase Agreement stated that the "Closing Location" was at FlyMex's Hangar: "'Closing Location' means Hangar FlyMex Calle 3 Lote 22, Col, San Pedro Totoltepec, 50266, Toluca, Estado de Mexico, Mexico." *See* Purchase Agreement § 1.1, attached as Ex. A. The Agreement also listed FlyMex as a party entitled to "[a]ny notices required or permitted under th[e] Agreement . . . ." Ex. A § 8.0. On behalf of Dornier, Fly-Mex carried out all of the seller's responsibilities and duties throughout the inspection, negotiations, and execution of the Purchase Agreement and subject transaction. FlyMex and its employees exclusively communicated with TSVA and EMS on behalf of the sellers, as the agent, co-conspirator, and joint venture partner ("Agent") of Dornier with respect to the subject transaction.

13.     Acting as the Agent for Dornier, FlyMex intentionally concealed the true history and condition of the subject engine including the fact that the engine had been involved in an accident, as more fully detailed herein.

14.     Personal jurisdiction also exists over FlyMex because FlyMex acted as Dornier's agent at all times and executed and fulfilled Dornier's contractual obligations as its agent.

15.     Personal jurisdiction exists over both Dornier and FlyMex because these entities engaged in a conspiracy to commit wrongful and fraudulent conduct and/or engaged in a joint venture with respect to the transaction giving rise to TSVA's claims, as further described herein.

16.    FlyMex was responsible for fulfilling Dornier's obligations pursuant to the Purchase Agreement as its Agent.

17.    Personal jurisdiction also exists over both Dornier and FlyMex because both entities committed tortious conduct that caused injury that was incurred and experienced by TSVA in New Mexico, as further detailed in this Amended Complaint. During the negotiations with Dornier, Dornier was informed that the Engine was to be installed on aircraft for use in airline services offered in New Mexico.  Dornier and FlyMex were, therefore, aware that the effects of their tortious conduct would be suffered in the state of New Mexico.

**GENERAL ALLEGATIONS**

18.    Plaintiff re-alleges the allegations contained in Paragraphs 1 through 17 above and incorporates the same by reference herein as if fully set forth.

19.    On September 27, 2019, Plaintiff signed an Engine Purchase Agreement, dated September 27, 2019, whereby Plaintiff agreed to purchase a Pratt & Whitney Engine, model PW306B, serial number CD0226 ("Engine 0226") from Defendant Dornier ("Purchase Agreement"), by way of a Bill of Sale. *See* Ex. A, Purchase Agreement.

20.    Plaintiff purchased Engine 0226 for $450,000.00.

21.    The Purchase Agreement defines "Engine" as "one (1) used Pratt & Whitney PW306B aircraft engine, ESN P CE-CD0226, as more fully described in Exhibit 1-1, together with all logs, data and records pertaining to operation, inspection, maintenance, substitution, repair, modification and overhaul of the Engine and its parts and components." Ex. A, § 1.0.

22.    Before the purchase was to be completed, Plaintiff, as part of its due diligence, required a pre-purchase inspection of Engine 0226 and an engine records review.

23.    TSVA engaged former Defendant EMS to conduct the pre-purchase engine inspection and records review.

24.    On or about September 12, 2019, Plaintiff signed a pre-purchase inspection agreement, dated September 12, 2019 ("Inspection Agreement") whereby EMS agreed to conduct a pre-purchase inspection and engine records review of Engine 0226.

25.    EMS represents itself as "a top-tier turbine engine expert that offers a comprehensive array of services", including services to manage key engine events.

26.    EMS represents that is has particular specialization in "Engine Borescope, Review, and Expert Services."

27.    EMS further represents that it has "the technical expertise" to ensure their clients "understand the history and value" of their purchase or exchange.

28.    EMS' own website makes clear that among its "core offerings" is EMS' expertise in reviewing documentation pertaining to Pratt & Whitney engines.

29.    Plaintiff relied on EMS' representations regarding its professional expertise and unique qualifications when it decided to engage EMS to ascertain the history and value of Engine 0226 before proceeding with the purchase.

30.    Prior to the inspection, EMS representatives requested from Dornier <u>all</u> records relating to Engine 0226, including its complete Logbook.  In fact, the Purchase Agreement at Exhibit 1-1 required that the records were to include: "**All Engine logbooks and related records** to include back to birth trace for rotating group components." Ex. A, Exhibit 1-1 (emphasis added).

31.    Defendant FlyMex, as an Agent of and on behalf of Defendant Dornier, carried out Defendant Dornier's contractual obligations under the Purchase Agreement.

32.     Defendant Dornier, through its Agent, Defendant FlyMex, provided EMS with certain engine documents, including the Engine logbook, in September 2019 before Plaintiff completed the purchase of Engine 0226.

33.     However, concealed from Plaintiff, Engine 0226 was involved in a crash that occurred in October of 2016 ("2016 Accident") that caused extensive accident-related damage to Engine 0226 and Engine 0226 had been out-of-service since the accident and was inoperable and essentially worthless.

34.     Defendant Dornier and its Agent Defendant FlyMex were aware of the 2016 accident and, upon information and belief, possessed documents, including records, logbooks, airframe logs, and other materials, evidencing the 2016 Accident and resulting damage.  However, Defendant Dornier and its Agent Defendant FlyMex did not provide any documentation to EMS or to Plaintiff disclosing the 2016 accident that damaged Engine 0226, nor any post-accident inspections.

35.     Defendant Dornier and its Agent Defendant FlyMex, intentionally withheld material records from the production of engine documents to EMS despite being required to produce all engine records related to Engine 0226 as required of the Purchase Agreement.

36.     The records withheld by Defendant Dornier and its Agent Defendant FlyMex, show that Engine 0226's accumulated time since new (TSN) and cycles since new (CSN) were the same in 2016 as shown in the engine records provided to EMS in September 2019, establishing that Engine 0226 had been removed from the accident aircraft and had not been used since the 2016 Accident.

37. The records intentionally excluded from the production to EMS would have revealed that Engine 0226 was involved in the 2016 Accident and led to the discovery that Engine 0226 was inoperable and essentially worthless.

38. Plaintiff submitted Engine 0226 to Pratt & Whitney for a full evaluation and repair estimate. On or about May 13, 2022, a report on Engine 0226 estimated that in order to return Engine 0226 to service, it would require repairs costing $1,380,200.15.

39. Despite Plaintiff's due diligence, Plaintiff had no information from which to conclude that Defendant Dornier's or its Agent Defendant FlyMex's representations were false. Defendant Dornier and its Agent Defendant FlyMex withheld maintenance records that would have revealed that Engine 0226 was involved in the 2016 Accident rendering it worthless.

40. Plaintiff would not have considered the purchase of Engine 0226 if Defendant Dornier and Defendant FlyMex, had truthfully and accurately disclosed all engine maintenance and log records.

41. Plaintiff reasonably relied upon Defendant Dornier's and its Agent Defendant FlyMex's representations, including those in the Purchase Agreement that they provided "**[a]ll [e]ngine logbooks and related records** to include back to birth trace for rotating group components." Ex. A, Exhibit 1-1. Defendant Dornier and its Agent FlyMex did not provide "[a]ll [e]ngine logbooks and related records," and in fact, intentionally withheld and concealed critical documents that would have revealed Engine 0226's accident history and inoperable condition.

42. TSVA was informed that during the inspection, the Engine was not attached to an aircraft but was placed on a stand. When TSVA and EMS employees inquired about foreign object damage ("FOD") to the Engine noted during the inspection, FlyMex employees responded to these inquiries, stating that the Engine had "sucked something in" and damaged the blades. These

representations were untrue. FlyMex and its employees intentionally concealed the fact that the engine was actually involved in a runway excursion accident resulting in far more extensive damage, which would not be detectable during the pre-purchase inspection.

43.    Prior to departing FlyMex's facility, TSVA's representative met with FlyMex's chief executive officer and asked him directly about the FOD damage in the engine. FlyMex's CEO affirmatively replied that there was no damage to Engine 0226.

44.    Plaintiff has suffered damages in an amount to be proven at trial as a result of Defendant Dornier's and Defendant FlyMex's concealment and withholding of material adverse engine records and misrepresentations regarding the history and condition of Engine 0226.

## Count I
### Breach of Contract against Defendant Dornier Leasing Company Ltd. and Defendant Dornier Leasing Company Hangar FlyMex

45.    Plaintiff re-alleges the allegations contained in Paragraphs 1 through 44 above and incorporates the same by reference herein as if fully set forth.

46.    The Purchase Agreement between Plaintiff and Defendant Dornier required Defendant Dornier to provide "[a]ll Engine logbooks and related records to include back to birth trace for rotating group components." Ex. A, Purchase Agreement § 1.1, Exhibit 1-1. Defendant Dornier was also required to "furnish[] documentation as requested, in order to carry out the intent of the Parties as expressed in th[e] Agreement." Ex. A, Purchase Agreement § 9.0.

47.    Defendant Dornier and Defendant FlyMex failed to satisfy this and other contractual requirements.

48.    Defendant Dornier had in its possession engine log records that identified that Engine 0226 had been involved in the 2016 Accident. Despite being asked for all engine log

records, Defendant Dornier and Defendant FlyMex affirmatively withheld and concealed the engine log records revealing the 2016 Accident.

49.     By misrepresenting and/or failing to disclose the engine log records and true, complete, and accurate facts surrounding Engine 0226, Defendant Dornier, through its Agent Defendant FlyMex, breached the requirements contained in the Purchase Agreement.

50.     As a result, Defendant Dornier and Defendant FlyMex have breached the Purchase Agreement by misrepresenting and/or failing to disclose material adverse records related to Engine 0226.

51.     By Defendant Dornier's and Defendant FlyMex's actions and omissions, these defendants have breached the Purchase Agreement.

52.     Plaintiff has suffered damages in an amount to be proven more fully at trial as a result of Defendant Dornier's and Defendant FlyMex's breach of the Purchase Agreement.

53.     Plaintiff is entitled to recover any and all other remedies and damages for breach of contract set forth in the Purchase Agreement and Inspection Agreement or otherwise permissible under New Mexico law.

54.     Defendants are liable to Plaintiff for any and all consequential damages suffered by Plaintiff as a result of Defendants' breach of the Purchase Agreement and Inspection Agreement.

55.     Defendants' actions and omissions have been intentional, willful, wanton, malicious, and/or reckless, entitling Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff prays for judgment against Defendants for compensatory damages in an amount to be proven at trial, punitive damages, pre-judgment, and post-judgment interest, for attorneys' fees, expenses, and costs of suit, and for such other and further relief as the Court deems proper.

**Count II**
**Breach of the Covenant of Good Faith and Fair Dealing against All Defendants**

56.     Plaintiff re-alleges the allegations contained in Paragraphs 1 through 55 above and incorporates the same by reference herein as if fully set forth.

57.     The New Mexico Supreme Court has held that "every contract in New Mexico imposes the duty of good faith and fair dealing upon the parties in the performance and enforcement of the contract." *Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 1993-NMSC-039, ¶ 64, 115 N.M. 690, 858 P.2d 66.

58.     The "implied covenant of good faith and fair dealing protects the reasonable expectations of the parties to a contract arising from its terms." *Sanders v. Fedex Ground Package Sys., Inc.*, 2008-NMSC-040, ¶ 1, 144 N.M. 449, 188 P.3d 1200 (citing Cont'l Potash, Inc., 1993-NMSC-039, ¶ 67). In this sense, one function of the covenant is "to enforce the spirit of deals." *Id*. ¶ 9.

59.     By their intentional and wrongful conduct, as further described herein, Defendant Dornier and Defendant FlyMex have breached the covenant of good faith and fair dealing implicit in the Purchase Agreement.

60.     Pursuant to the terms of the Purchase Agreement, Plaintiff reasonably expected to receive the benefit of obtaining all material information regarding Engine 0226 and was justified in its expectation that Defendant Dornier and its Agent Defendant FlyMex would produce all material information regarding Engine 0226.

61.     By their misrepresentations and concealment of adverse material information regarding Engine 0226, Defendants wrongfully deprived Plaintiff the benefit of the Purchase Agreement.

62.    Defendant Dornier's and its Agent Defendant FlyMex's misrepresentations and concealment of adverse material information regarding Engine 0226 caused injury to Plaintiff.

WHEREFORE, Plaintiff prays for judgment against Defendants for damages in an amount to be proven at trial, for pre-judgment and post-judgment interest, for attorneys' fees, expenses, and costs of suit, and for such other and further relief as the Court deems proper.

**Count III**
**Fraud and Constructive Fraud against Defendant Dornier Leasing Company Ltd.,**
**Defendant Dornier Leasing Company Hangar FlyMex, and Hangar FlyMex**

63.    Plaintiff re-alleges the allegations contained in Paragraphs 1 through 62 above and incorporates the same by reference herein as if fully set forth.

64.    Defendant Dornier and Defendant FlyMex intentionally concealed and withheld adverse material engine log records related to Engine 0226 when it produced other engine log records to EMS. These records would have revealed the Engine 0226 was involved in the 2016 Accident.

65.    At the time, Defendant Dornier and Defendant FlyMex knew that the records provided to EMS excluded adverse material engine log records.

66.    Defendant Dornier and Defendant FlyMex intentionally concealed and withheld adverse material engine log records with the intent to deceive.

67.    By and through these actions, Defendant Dornier and Defendant FlyMex acted contrary to public policy and sound morals.

68.    Defendant Dornier and Defendant FlyMex concealed and withheld adverse material records with the intent that Plaintiff would act upon and justifiably rely upon the incomplete engine log records provided to EMS.

11

69.     Plaintiff did in fact rely upon the incomplete engine log records provided by Defendant Dornier and Defendant FlyMex to its detriment.

70.     Defendant Dornier's and Defendant FlyMex's intentional concealing and withholding of adverse material records caused injury to Plaintiff.

WHEREFORE, Plaintiff prays for judgment against Defendant Dornier and Defendant FlyMex for damages in an amount to be proven at trial, punitive damages, for pre-judgment and post-judgment interest, for attorneys' fees, expenses, and costs of suit, and for such other and further relief as the Court deems proper.

**Count IV**
**Conspiracy to Commit Fraud against Defendant Dornier Leasing Company Ltd.,**
**Defendant Dornier Leasing Company Hangar FlyMex, and Hangar FlyMex**

71.     Plaintiff re-alleges the allegations contained in Paragraphs 1 through 70 above and incorporates the same by reference herein as if fully set forth.

72.     Defendant Dornier and its co-conspirator Defendant FlyMex unlawfully agreed to conceal or withhold, and did in fact conceal or withhold, adverse information regarding the condition and history of Engine 0226 with the intention to deceive. Defendant Dornier and its co-conspirator Defendant FlyMex agreed to execute their scheme by performing the above-mentioned unlawful acts and/or by doing unlawful acts by unlawful means.

73.     Defendant Dornier and its co-conspirator Defendant FlyMex knew that the records concealed or withheld included adverse information that, if properly disclosed, would result in the termination of the potential sale of Engine 0226 to TSVA.

74.     Defendant Dornier and its co-conspirator Defendant FlyMex, through their employees, agents, and representatives, concealed or withheld adverse material including engine logs, related airframe records, and other adverse information with the intention to deceive.

75.    Defendant Dornier and its co-conspirator Defendant FlyMex, through their employees, agents, and representatives, made affirmative misrepresentations regarding the history and condition of Engine 0226 and the nature, extent, and origin of damage to the engine.

76.    Defendant Dornier and its co-conspirator FlyMex continued their conspiratorial acts in furtherance of the conspiracy related to concealing or withholding adverse information, including but not limited to the following acts:

     a.    Knowingly concealing or withholding adverse records related to Engine 0226 when it produced other engine log records to EMS;

     b.    Knowingly concealing or withholding complete engine log records in the course of the transaction involving the purchase and sale of Engine 0226;

     c.    Knowingly concealing or withholding information related to the true condition and history of Engine 0226;

     d.    Knowingly concealing or withholding true and accurate information regarding the extent of damage to Engine 0226, whether through oral or written statements or other representations;

     e.    Affirmatively misstating and misrepresenting the history and condition of Engine 0226.

     f.    Other acts to be determined through the course of discovery.

77.    By and through these actions, Defendant Dornier and its co-conspirator Defendant FlyMex acted contrary to public policy and sound morals.

78.    The aforementioned information and/or knowledge concealed by Defendant Dornier and its co-conspirator Defendant FlyMex was material information which Defendant Dornier and Defendant FlyMex were under a duty to disclose and/or which each had assumed the duty of disclosing.

79.     Defendant Dornier and its co-conspirator Defendant FlyMex concealed and withheld adverse material records and adverse information with the intent that Plaintiff would act upon and justifiably rely upon the incomplete engine log records.

80.     Plaintiff did in fact rely upon the incomplete and incorrect information provided by Defendant Dornier and its co-conspirator Defendant FlyMex to its detriment.

81.     Defendant Dornier's and its co-conspirator Defendant FlyMex's acts and omissions, including those of their employees, agents, and representatives, constitute a successful conspiracy to commit fraud.

82.     Conspiracy is a vehicle for imputing the tortious acts of one co-conspirator to another. Each act done in pursuance of a conspiracy by one of several conspirators is an act for which each is jointly and severally liable. Defendant Dornier and Defendant FlyMex, as members of a civil conspiracy, are liable for all acts and/or omissions of any co-conspirator done in pursuance of the conspiracy.

83.     As a direct and proximate result of the aforementioned conspiracy to commit fraud by concealing and/or withholding material information by Defendant Dornier and its co-conspirator Defendant FlyMex, Plaintiff was injured.

WHEREFORE, Plaintiff prays for judgment against Defendant Dornier and Defendant FlyMex for damages in an amount to be proven at trial, punitive damages, for pre-judgment and post-judgment interest, for attorneys' fees, expenses, and costs of suit, and for such other and further relief as the Court deems proper.

**<u>Count V</u>**
**<u>Fraudulent Inducement against Breach of Contract against Defendant Dornier Leasing Company Ltd., Defendant Dornier Leasing Company Hangar FlyMex, and Hangar FlyMex</u>**

84.    Plaintiff re-alleges the allegations contained in Paragraphs 1 through 83 above and incorporates the same by reference herein as if fully set forth.

85.    Defendant Dornier and Defendant FlyMex intentionally concealed and withheld adverse material engine log records related to Engine 0226 when it produced other engine log records to EMS. These records would have revealed the Engine 0226 was involved in the 2016 Accident.

86.    Defendant Dornier and Defendant FlyMex fraudulently induced Plaintiff to follow through and purchase Engine 0226 by intentionally withholding adverse material records and information related to Engine 0226.

87.    Defendant Dornier and Defendant FlyMex knew that the records and information concealed or withheld included adverse material engine logs and related airframe records.

88.    As a consequence of Defendant Dornier's and Defendant FlyMex's intentional concealing and withholding of adverse material engine log records related to Engine 0226, Plaintiff purchased Engine 0226. Plaintiff reasonably relied upon the truthfulness and accuracy of the information Defendant Dornier and Defendant FlyMex provided to EMS for its pre-purchase inspection of Engine 0226.

89.    Plaintiff would not have purchased Engine 0226 had Defendant Dornier and Defendant FlyMex provided the adverse material engine logs, which would have shown that Engine 0226 has not been used since the 2016 Accident.

90.    Plaintiff had no reason to know that the records and information provided to EMS excluded adverse material records and was, therefore, justified in relying upon the pre-purchase inspection report, which was based on the incomplete records and information provided by Defendant Dornier and Defendant FlyMex.

91.    Plaintiff has been damaged as a result of Defendant Dornier and Defendant FlyMex intentionally withholding of adverse records related to Engine 0226.

WHEREFORE, Plaintiff prays for judgment against Defendant Dornier and Defendant FlyMex for damages in an amount to be proven at trial, punitive damages, for pre-judgment and post-judgment interest, for attorneys' fees, expenses, and costs of suit, and for such other and further relief as the Court deems proper.

### Count VI
### Conspiracy to Commit Fraudulent Inducement against Defendant Dornier Leasing Company Ltd., Defendant Dornier Leasing Company Hangar FlyMex, and Hangar FlyMex

92.    Plaintiff re-alleges the allegations contained in Paragraphs 1 through 91 above and incorporates the same by reference herein as if fully set forth.

93.    Defendant Dornier and its co-conspirator Defendant FlyMex unlawfully agreed to conceal or withhold, and did in fact conceal or withhold, adverse information regarding the condition and history of Engine 0226 with the intention to fraudulently induce Plaintiff to follow through and purchase Engine 0226. Defendant Dornier and its co-conspirator Defendant FlyMex agreed to execute their scheme by performing the above-mentioned unlawful acts and/or by doing unlawful acts by unlawful means.

94.    Defendant Dornier and its co-conspirator Defendant FlyMex knew that the records and information concealed or withheld included adverse material engine logs and related airframe records.

95.    Defendant Dornier and its co-conspirator Defendant FlyMex, through their employees, agents, and representatives, concealed or withheld adverse material engine logs, related airframe records, and adverse information with the intention to fraudulently induce Plaintiff to follow through and purchase Engine 0226.

16

96.     Defendant Dornier and its co-conspirator FlyMex continued their conspiratorial acts in furtherance of the conspiracy related to concealing or withholding adverse material engine log and related airframe records, including but not limited to the following acts:

   a. Knowingly concealing or withholding adverse records related to Engine 0226 when it produced other engine log records to EMS;

   b. Knowingly concealing or withholding complete engine log records in the course of the transaction involving the purchase and sale of Engine 0226;

   c. Knowingly concealing or withholding information related to the true condition and history of Engine 0226;

   d. Knowingly concealing or withholding true and accurate information regarding the extent of damage to Engine 0226, whether through oral or written statements or other representations;

   e. Affirmatively misstating and misrepresenting the history and condition of Engine 0226.

   f. Other acts to be determined through the course of discovery.

97.     The aforementioned information and/or knowledge concealed by Defendant Dornier and its co-conspirator Defendant FlyMex was material information which Defendant Dornier and Defendant FlyMex were under a duty to disclose and/or which each had assumed the duty of disclosing.

98.     Defendant Dornier and its co-conspirator Defendant FlyMex concealed and withheld adverse material records with the intention that Plaintiff would act upon and justifiably rely upon the incomplete engine log records.

99.     As a consequence of Defendant Dornier's and its co-conspirator Defendant FlyMex's intentional concealing and withholding of adverse material engine log records related to Engine 0226, Plaintiff purchased Engine 0226. Plaintiff reasonably relied upon the truthfulness and accuracy of the information Defendant Dornier and its co-conspirator Defendant FlyMex

provided regarding the condition and history of Engine 0226 throughout the transaction to purchase the Engine.

100.    Plaintiff would not have purchased Engine 0226 had Defendant Dornier and its co-conspirator Defendant FlyMex provided the adverse material engine logs, related airframe records, and adverse information, which would have revealed that Engine 0226 has not been used since the 2016 Accident.

101.    Plaintiff had no reason to know that the records provided to EMS excluded adverse material records and information and was, therefore, justified in relying upon the pre-purchase inspection report, which was based on the records and information provided by Defendant Dornier and its co-conspirator Defendant FlyMex.

102.    Defendant Dornier's and its co-conspirator Defendant FlyMex's acts and omissions, including those of their employees, agents, and representatives, constitute a successful conspiracy to fraudulently induce Plaintiff to follow through with the purchase of Engine 0226.

103.    Conspiracy is a vehicle for imputing the tortious acts of one co-conspirator to another. Each act done in pursuance of a conspiracy by one of several conspirators is an act for which each is jointly and severally liable. Defendant Dornier and Defendant FlyMex, as members of a civil conspiracy, are liable for all acts and/or omissions of any co-conspirator done in pursuance of the conspiracy.

104.    As a direct and proximate result of the aforementioned conspiracy to fraudulently induce Plaintiff to follow through with the purchase of Engine 0226 by Defendant Dornier's and its co-conspirator Defendant FlyMex's concealment and/or withholding of adverse material information, Plaintiff was injured.

WHEREFORE, Plaintiff prays for judgment against Defendant Dornier and Defendant FlyMex for damages in an amount to be proven at trial, punitive damages, for pre-judgment and post-judgment interest, for attorneys' fees, expenses, and costs of suit, and for such other and further relief as the Court deems proper.

### Count VII
### Joint Venture Liability Amongst Defendant Dornier Leasing Company Ltd., Defendant Dornier Leasing Company Hangar FlyMex, and Hangar FlyMex

105.    Plaintiff re-alleges the allegations contained in Paragraphs 1 through 104 above and incorporates the same by reference herein as if fully set forth.

106.    Defendant Dornier and Defendant FlyMex engaged at all material times in joint venture for profit. There was a community of interest in the performance of the common purpose of selling and purchasing aircraft and aircraft parts between Defendant Dornier and Defendant FlyMex. Defendant Dornier and Defendant FlyMex have a joint proprietary interest in the purchase and sale of aircraft and aircraft parts, they have a mutual right to control aspects of such operations, and they have a duty to share in profits and losses sustained in such operations.

107.    Such joint venture owed a legal duty to Plaintiff TSVA Holdings, Inc. Defendants, through their joint venture, breached the duty and the breach of that duty proximately caused Plaintiff TSVA Holdings, Inc.'s injuries. Defendants, by and through their joint venture, were negligent in ways including, but not limited to, the following:

      a.  Failing to exercise reasonable care in the discharge of Defendants' duties in the sale of Engine 0226;

      b.  Failing to disclose adverse records related to Engine 0226 when it produced other engine log records to EMS;

      c.  Failing to provide complete engine log records in the course of the transaction involving the purchase and sale of Engine 0226;

      d.  Failing to disclose the true condition and history of Engine 0226;

19

e.   Failing to provide true and accurate information regarding the extent of damage to Engine 0226, whether through oral or written statements or other representations;

f.   Affirmatively misstating and misrepresenting the history and condition of Engine 0226.

g.   Other acts of negligence to be determined through the course of discovery.

108.   Defendant Dornier's and Defendant FlyMex's negligence was the proximate cause of Plaintiff's injuries.

109.   Plaintiff's injuries resulted from Defendants' gross negligence, which entitles it to exemplary damages under New Mexico law.

WHEREFORE, Plaintiff prays for judgment against Defendant Dornier and Defendant FlyMex for damages in an amount to be proven at trial, punitive damages, for pre-judgment and post-judgment interest, for attorneys' fees, expenses, and costs of suit, and for such other and further relief as the Court deems proper.

## Count VIII
## Negligent Misrepresentation against All Defendants

110.   Plaintiff re-alleges the allegations contained in Paragraphs 1 through 109 above and incorporates the same by reference herein as if fully set forth.

111.   Defendant Dornier and Defendant FlyMex had a duty to provide complete and accurate material records and information regarding Engine 0226.

112.   Defendant Dornier and Defendant FlyMex concealed and withheld adverse records related to Engine 0226 when it produced other engine log records to EMS. These records would have revealed the Engine 0226 was involved in the 2016 Accident.

113.    Defendant Dornier and Defendant FlyMex's representations, whether through oral or written statements or other representations, were material to the history and condition of Engine 0226.

114.    Defendant Dornier and Defendant FlyMex had no reasonable grounds for believing that the records actually produced to EMS and Plaintiff were the entire set of records related to Engine 0226 and that other representations regarding Engine 0226, whether through oral or written statements or other representations, were complete and accurate.

115.    Defendant Dornier and Defendant FlyMex provided incomplete engine log records and adverse information to EMS and Plaintiff in the course of the transaction involving the purchase and sale of Engine 0226.

116.    Defendant Dornier and Defendant FlyMex had a pecuniary interest in the transaction.

117.    By failing to provide all necessary and relevant records and information to EMS and Plaintiff, Defendant Dornier and Defendant FlyMex supplied false information in a purported effort to provide guidance to Plaintiff in connection with the transaction resulting in the Purchase Agreement.

118.    To the extent Defendant Dornier and Defendant FlyMex contend they did not intentionally or knowingly withhold adverse material engine records, these defendants failed to exercise reasonable care or competence in communicating the adverse material information to Plaintiff.

119.    Plaintiff suffered pecuniary loss by justifiably relying upon Defendant Dornier's and Defendant FlyMex's incomplete production of engine log records.

WHEREFORE, Plaintiff prays for judgment against Defendants for damages in an amount to be proven at trial, for pre-judgment and post-judgment interest, for attorneys' fees, expenses, and costs of suit, and for such other and further relief as the Court deems proper.

## Count IX
## Violation of the New Mexico Unfair Practices Act against All Defendants

120.    Plaintiff re-alleges the allegations contained in Paragraphs 1 through 119 above and incorporates the same by reference herein as if fully set forth.

121.    All of Defendant Dornier's and Defendant FlyMex's acts and omissions, as alleged herein with respect to the Purchase Agreement and the misrepresentations regarding Engine 0226 engine log records, constitute false or misleading oral or written statements or other representations that were knowingly made in connection with the sale of goods in the regular course of Defendant Dornier's and Defendant FlyMex's business.

122.    Defendant Dornier and Defendant FlyMex knowingly and intentionally misrepresented and concealed, through oral or written statements or other representations, the true nature and condition of Engine 0226 to deceive and induce Plaintiff to follow through with the purchase of Engine 0226.

123.    Defendant Dornier and Defendant FlyMex knowingly and intentionally concealed adverse material engine logs, related airframe records, and other adverse information to deceive and induce Plaintiff to follow through with the purchase of Engine 0226.

124.    Defendant Dornier's and Defendant FlyMex's misrepresentations and other acts and omissions deceived and mislead Plaintiff.

125.    Defendant Dornier's and Defendant FlyMex's misrepresentations and other acts and omissions constitute unfair deceptive trade practices and/or unconscionable trade practices in violation of the New Mexico Unfair Practices Act, NMSA 1978, §§ 57-12-1 *et seq*.

126.    Plaintiff has suffered damages as a result of Defendant Dornier's and Defendant FlyMex's unfair, deceptive, and/or unconscionable trade practices.

WHEREFORE, Plaintiff prays for judgment against Defendants for damages in an amount to be proven at trial, as well as exemplary damages pursuant to the New Mexico Unfair Practices Act, NMSA 1978, § 57-12-10, for pre-judgment and post-judgment interest, for attorneys' fees, expenses, and costs of suit, and for such other and further relief as the Court deems proper.

## Count X
### Punitive Damages against Defendant Dornier Leasing Company Ltd., Defendant Dornier Leasing Company Hangar FlyMex, and Hangar FlyMex

127.    Plaintiff re-alleges the allegations contained in Paragraphs 1 through 126 above and incorporates the same by reference herein as if fully set forth.

128.    All of Defendant Dornier Leasing Company Ltd.'s and Defendant Dornier Leasing Company Hangar FlyMex's acts and omissions as alleged herein were malicious, reckless, wanton, oppressive, fraudulent, and/or in bad faith and in disregard for Plaintiff's rights.

WHEREFORE, Plaintiff prays for judgment against Defendant Dornier Leasing Company Ltd. and Defendant Dornier Leasing Company Hangar FlyMex for punitive damages in an amount to be proven at trial.

## CONCLUSION

WHEREFORE, Plaintiff requests the Court to enter judgment in its favor and against Defendants, as follows.

A.    Determine that Defendant Dornier and Defendant FlyMex breached the Purchase Agreement and award compensatory damages in an amount to be proven at trial, as well as punitive damages in an amount to be provable at trial, to Plaintiff as a result of Defendant Dornier's and Defendant FlyMex's breach;

B.     Determine that Defendant Dornier and Defendant FlyMex have breached the covenant of good faith and fair dealing implicit in the Purchase Agreement and award compensatory and punitive damages to Plaintiff as a result of Defendant Dornier's and Defendant FlyMex's breach of the covenant of good faith and fair dealing;

C.     Determine that Defendant Dornier and Defendant FlyMex have committed fraud and fraudulent inducement and award compensatory and punitive damages to Plaintiff;

D.     Determine that Defendant Dornier and Defendant FlyMex have committed conspiracy to commit fraud and fraudulent inducement and award compensatory and punitive damages to Plaintiff;

E.     In the alternative to fraud and fraudulent inducement, determine that Defendant Dornier and Defendant FlyMex negligently misrepresented material facts to Plaintiff in order to induce it to purchase Engine 0226, and award compensatory damages to Plaintiff;

F.     Determine that Defendant Dornier and Defendant FlyMex were engaged in a joint venture and that the Defendants, through their joint venture, breached the legal duties owed to Plaintiff, that breach of those duties proximately caused Plaintiff's injuries, and that Defendant Dornier and Defendant FlyMex are jointly and severally liable for any and all remedies or damages awarded against either of them;

G.     Determine that Defendant Dornier and Defendant FlyMex have violated the New Mexico Unfair Practices Act, NMSA 1978, §§ 57-12-1 *et seq*., and award damages, exemplary damages, and attorney fees to Plaintiff pursuant to NMSA 1978, § 57-12-10;

H.     Award compensatory damages against Defendants in an amount to be proven and determined at trial;

I.        Award  punitive  damages  against  Defendant  Dornier  Leasing  Company  Ltd.,
Defendant Dornier Leasing Company Hangar FlyMex, and Defendant Hangar FlyMex in amount
to be proven and determined at trial;

J.        Award pre- and post-judgment interest; and

K.        Award such other and further relief as the Court deems just and proper.

                                        **HINKLE SHANOR LLP**

                                        */S/ Kurt B. Gilbert*
                                        Thomas M. Hnasko
                                        Kurt B. Gilbert
                                        David A. Lynn
                                        218 Montezuma Ave.
                                        Santa Fe, NM 87505
                                        (505) 982-4554
                                        thnasko@hinklelawfirm.com
                                        kgilbert@hinklelawfirm.com
                                        dlynn@hinklelawfirm.com

                                        *Attorneys for Plaintiff*